UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAN LIGHTFOOTLANE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 06-53-B-W |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| HEALTH AND HUMAN | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant | ) | |

### *Recommended Decision on Motion to Dismiss*

Jan Lightfootlane, proceeding as a pro se plaintiff, operates a statewide homeless crisis hotline.  Her complaint with the Maine Department of Health and Human Services is that its employees, allegedly, provide her clients with false information and misapply the law in administering the State of Maine's general assistance program.  Lightfootlane seeks declaratory and injunctive relief as well as the levying of fines against unspecified municipalities. The Maine Department of Human Services has filed a motion to dismiss this action (Docket No. 7) arguing that as a state agency it is immune from suit; it is not a person within the meaning of 42 U.S.C. § 1983; Lightfootlane has no standing to pursue this action; and Lightfootlane fails to state a claim for which relief can be granted.  I recommend that the Court **GRANT** the Department's motion to dismiss.

*Discussion*

**The General Assistance Program**

The General assistance (GA) statutory scheme at issue is, as set forth in the defendant's motion to dismiss, as follows.  GA provides "immediate aid [to] persons who are unable to provide for the basic necessities essential to maintain themselves or their families."  22 M.R.S.A. § 4301(5).  Each Maine municipality assumes liability "for the support of any eligible person at the time of application," and designates an agent, or overseer, to distribute short-term, emergency aid to the needy as a supplement to state-provided, categorical welfare benefits.  Id. § 4301(5), (9), (12).  Municipalities must pay GA from their own funds but are generally reimbursed through a Departmental cost-sharing program.  See id. §§ 4307(1), 4311.1.  The Department must reimburse each municipality whose GA expenditures exceed a certain percentage of its annual property tax revenues and otherwise meets the broad standards set by the Legislature.  See id. § 4311.

Each municipality must administer GA in accordance with an ordinance, which the Department must endorse under the statutory guidelines.  See id. § 4305.2.  Once the ordinance is endorsed, the municipal overseer bears sole authority to determine each applicant's eligibility.  See id. § 4309(1-B).  Any municipal action denying GA to an applicant must be communicated in writing.  See id. § 4321.  The denied applicant has a right to a hearing before the municipal officers or the otherwise duly authorized hearing agents.  See id. § 4322.  Thereafter, the applicant may appeal any adverse hearing decision or failure to act by the municipality to the Maine Superior Court, pursuant to Maine Rule of Civil Procedure 80B. See id.

The Department must assist municipalities with program administration, periodically review each program for statutory compliance, and review a municipal program "in response to a complaint from any person as necessary." Id. §§ 4314(1), 4323(1); 10-144 C.M.R. Ch. 323, § IX. The Department may also respond to an applicant's request to intervene, and will directly grant assistance where a municipality violates its statutory obligations. See 22 M.R.S.A. § 4323(3); 10-144 C.M.R. Ch. 323, § XI. The Departmental review requires inspection of the municipal records and processes, and culminates in a written report that "shall set forth the department's findings of whether the municipality is in compliance with this chapter." Id. An aggrieved person may appeal the Departmental review but must do so by means of the process provided by the Maine Administrative Procedures Act, 5 M.R.S.A. §§ 11001-11008, and Maine Rule of Civil Procedure 80C. See 22 M.R.S.A. § 4307(6)

***Lightfootlane's Complaint Allegations***

### *Standing*

In her complaint Lightfootlane addresses the issue of her standing to bring this suit by asserting that each time a representative of the defendant provides her clients with false information her 'calling' to help prevent or overcome homelessness is injured. She alleges that her work becomes three to seven times harder with the unfair application of the laws. Lightfootlane explains that over the past twenty years she has attempted to get the defendant to provide proper oversights of Maine municipalities without tangible results. She states that the defendant responds to her concern of ineffectual oversight by stating that any misapplication of the law on a municipality's part is due to poor training which is the responsibility of the particular municipality.

When one of her hotline callers receives misinformation about entitlement to general assistance, Lightfootlane must search for alternative housing and payment for her assistance-eligible client.  She alleges that she has been "monetarily affected by towns not helping those in need who qualifies" and has spent her own money to house those who have been illegally denied assistance.  (Compl. at 6.)  Lightfootlane contends that "such ... bad implementation of the laws clearly violates" her First Amendment rights of association and meaningful occupation.  (Compl. at 2.)  Furthermore, Lightfootlane alleges that her Fourteenth Amendment rights are violated by dint of the defendant's misinformation as: "The State has no right making [her] work to assist those in need- harder with routine and improper execution of the law."  (Id. at 3.)  She asserts that the defendant's misapplication of the law is the direct cause of her increased labor in housing the most vulnerable people who qualify for aid but who are denied equal protection.

These allegations, Lightfootlane believes, demonstrate her standing to seek declaratory relief.

### Jurisdiction

With regards to this Court's jurisdiction Lightfootlane asserts that her First Amendment right "to work at any lawful calling, without impermissible interference of the government" has been violated. (Id.)  She also contends that the defendant has trammeled her Fifth and Fourteenth Amendment right to have statutes properly executed and applied.  Furthermore, Lightfootlane asserts that she has a state law claim under 22 M.R.S.A. § 4323.

### *Substantive Allegations*

In the portion of her complaint that appears to set forth the substance of her complaint[1], Lightfootlane indicates that she brings this complaint as a sales tax payer and an advocate for the homeless, who is injured by the unequal application of the general assistance program.   She explains:

> When people who call the Homeless Crisis Hotline, are unconstitutionally denied aid; as the primary hotline staff person I must tell the callers in general – the procedure to appeal.  Then I try to get other services to serve them.  Or just know what IS suppose[d] to work is but a false promise.  Governments actions impermissibly hampers my effectiveness.  Government has no legitimate reason to keep those who qualifies for assistance, off the aid roles by transposing laws against "Qualified applicants[.]"

(Id. at 5.)  She alleges that she has been injured by the government for each of the past twenty years and this injury is ongoing.

Lightfootlane asserts that one cause for the misapplication of the general assistance laws is to save money in the short run and that this bad dispensing of the law violates the Fifth and Fourteenth Amendment due process rights of Lightfootlane and "all who fall upon hard times."  (Id. at 6.) She explains:

> This uniform, but contrary to written law application violates the due process rights of taxpayers to fair and equal application of the laws.  It is a practice of denying those who are indeed eligible for aid, the assistance they need.
> Since 1989 I have operated a Homeless Crisis Hotline out of my home.  It's a statewide informational/Referral hotline.  To assist others to avoid or overcome Homeless[ness] is a legal calling.  One founded on providing accurate information to those in need who phones the hotline.
> This includes the caller being told about the use of GA, when it sounds as if by fair use of written laws the person should be helped.
> By town[]s[,] cities and villages twisting General Assistance laws, it impermissibly and negatively affects my work.  As a first amendment

---

[1]     Lightfootlane has not demarcated this transition with a header transitioning between jurisdiction and the substance of her complaint but I believe it is fair to read her substance allegations as commencing in the middle of page 4 of her complaint.

right, I have the entitlement to participate as effectively as humanly possible, without impermissible government interference in any legal calling of my choice.  The Hotline is a legal calling I staff the informational hotline, from my home, since 1989.

Each citizen/taxpayer has the right to have the laws governing them properly applied as written.  These laws are administered by nearly 500 of Maine's municipality, public officials.  The accurate use of General Assistance laws, are entrusted to be overseen by the Department of Human Services.

Regardless of the intention of written law, 2/3 of the people facing a Homeless Crisis, who phone the Homeless Crisis Hotline, are rightfully refer[ed] to their town.  Only to be wrongfully denied assistance.  The Dept of Human Services, are more likely to protect the short –term monetary interest of the towns.

....

The main excuses the towns use[] to turn away the qualified applicants is the applicant make too much money the rates do not reflect the fair-market values of rents, and municipalities exclaims even having an eviction notice-or staying with a relative the applicant is not in an emergency[,] its not an emergency.  This definition of an emergency was added when Pine Tree Legal Assistance lobbied, to protect the Welfare mother whose income for her children is over the maximum but they lack enough income to pay the rent.

If a mere $350 a month, puts a family over the income limit[,] [t]he income limit might not fairly reflect the housing prices.  The emergency law was intended to keep families and individuals housed.  So they do not become displace due to the new laws of 1993.

....

Another of the most commonly misconstrued statutes is when a person seeking assistance is under the age of 25 years old.  Back when ... Maine's Budget did not balance, in 1993 Maine's legislature pas[sed] a reimbursement GA law.  It was thought that many parents had money to reimburse GA, for most children.

The FACT IS only 10 % of the young people's parents can afford to reimburse General Assistance.  The effect of the bad actual application means young 24 year old mothers are turned away from help they are otherwise qualified to receive.  It took towns merely a few months to learn parents of 24 year olds do not have huge incomes.

Today many young people who call the hotline are wrongly told either "Go home and live with your parents[]" or 'their parents must pay for the 20 year olds apartment.'

When the caller reports that back to me that the town is applying other than the law as written below, at the Hotline, I have to do casework. I have gotten creative to find a church in their area to help that family or individual.

6

> If General Assistance IS suppose[d] to help those whose parents refuse[] or [are] unable to help, my having to find a different means of assisting that family, is extra work the Hotline nor myself should do.  The local and state government impermissibly hinders my 1st amendment right to give accurate information.
> Because I believe in the people I am assisting, I suffer frustration and needless added work at the Unconstitutional denial of town aid.

(Id. at 7-10.)

Lightfootlane asks the court to "formulate meaningful declarative remedies," listing as one of her examples of such relief as setting up a watchdog group reporting to the Governor's office and the press. (Id. at 12)  She also wants the Court to fine municipalities.  (Id.)

### Lightfootlane's Standing

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984).  "The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government." Id.

With respect to the threshold question of standing:

> The Art. III doctrine that requires a litigant to have "standing" to invoke the power of a federal court is perhaps the most important of these doctrines. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, [] 422 U.S. [490,] 498 [(1975)]. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. See Valley Forge, [] 454 U.S. [464,] 474-475 [(1982)]. The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. 454 U.S., at 472.

Like the prudential component, the constitutional component of standing doctrine incorporates concepts concededly not susceptible of precise definition. The injury alleged must be, for example, "'distinct and palpable,'" Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) (quoting Warth v. Seldin, [] 422 U.S. at 501), and not "abstract" or "conjectural" or "hypothetical," Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983); O'Shea v. Littleton, 414 U.S. 488, 494 (1974). The injury must be "fairly" traceable to the challenged action, and relief from the injury must be "likely" to follow from a favorable decision. See Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S.[26,] 38, 41 [(1976)].

Id. at 750-51.

The United States Supreme Court has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Id. at 754. In other words, Lightfootlane has "no standing to complain simply that their Government is violating the law." Id. at 755. "[A]bsent an allegation of a specific threat of being subject to the challenged practices," a plaintiff has "no standing to ask for an injunction"; "[a] federal court ⋯ is not the proper forum to press" general complaints about the way in which government goes about its business. Id. at 760 (quoting Los Angeles v. Lyons, 461 U.S. 95, 112 (1983).

It is true that Lightfootlane argues that her First Amendment rights stemming from her role as a hotline advocate have been violated, in this way hoping to "allege harm to a concrete, personal interest" id. at 756. She also references the Fifth and Fourteenth Amendments. In her response to the defendant's motion she contends: "I assert as an individual whose work is steeping with preventable problematic terms due to the allegedly unlawful conduct of the government, I have standing to sue." (Resp. Mot. Dismiss at 10.) She also cites having a meal in Waterville, Maine with the National Homeless Coalition director and her written submissions to a national underground newspaper as evidence of her standing. (Id.) Finally she indicates that she is indigent

and might one day need general assistance as a member of "a class of people who live hand to mouth."  (Id.)

In my view these claims of injury do not establish Lightfootlane's standing to bring this suit which is at heart a suit seeking to have government act in accordance with the general assistance law. Her concern that someday down the road she may be in need of general assistance is entirely hypothetical and does not confer standing. Her allegations of rights violations simply do not fall within the zone of interests protected by the First, Fifth, and Fourteenth Amendment.  Lightfootlane's allegations do not support a claim that her speech and association rights have been infringed by the State nor do the facts that she sets forth support a claim that she been denied any process due to her.  She does not gain standing simply by asserting her claims under specific constitutional amendments.

### Conclusion

For the reasons set forth above, I recommend that the Court **GRANT** the motion to dismiss (Docket No. 7).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 11, 2006.